Eck, Respondent, vs. Netherlands Insurance Company, Appellant.

*January 12—February 10, 1931.*

516

The cause was submitted for the appellant on the brief of *Wolfe & Hart* of Milwaukee, and for the respondent on that of *Robert V. Baker* of Kenosha.

WICKHEM, J. In the view the court takes of this matter it is not necessary to consider the sufficiency or validity of the proceedings for an appraisal. If there is evidence in the record to sustain the conclusion of the trial court that there was a total loss by fire, within the meaning of sec. 203.21, Stats., then the provisions of that section apply, and the amount of the insurance written in the policy is to be taken as the true value of the property when insured, and the true measure of damages when destroyed, and the provisions in the policy for an appraisal are inoperative and the proceedings of no effect upon the rights of the parties. *Seyk v. Millers' Nat. Ins. Co.* 74 Wis. 67, 41 N. W. 443; *Thompson v. St. Louis Ins. Co.* 43 Wis. 459. The rule with respect to what constitutes a total loss or a total destruction in this state is set out in several Wisconsin cases. *Seyk v. Millers'*

*Nat. Ins. Co., supra; Lindner v. St. Paul F. & M. Ins. Co.*
93 Wis. 526, 67 N. W. 1125; *St. Clara Female Academy v.
Northwestern Nat. Ins. Co.* 98 Wis. 257, 73 N. W. 767.

In *St. Clara Female Academy v. Northwestern Nat. Ins.
Co., supra,* the court said:

"Total loss under the statute does not mean that the ma-
terial of which the building is composed shall be annihilated
or reduced to a shapeless mass; that when the identity of the
structure as a building is destroyed, so that its specific char-
acter as such no longer remains and there is nothing left but
the cellar walls and a dilapidated foundation, the loss is total
within the meaning of the statute."

The court cites with approval the case of *Hamburg-Bre-
men F. Ins. Co. v. Garlington,* 66 Tex. 103, 18 S. W. 337,
where it was held that "total loss does not mean an absolute
extinction of the building; that the test is whether the build-
ing has lost its identity and specific character, so that it can
be no longer called a building." The court also cites with
approval *Oshkosh P. & P. Co. v. Mercantile Ins. Co.* 31 Fed.
200, where the court held that "wholly destroyed," as used
in the Wisconsin statute, "was considered and construed
as not meaning more than such destruction of the building
as that, though some part still remains standing, it cannot be
longer designated as a building."

On the subject of what constitutes a total loss there seems
to be a conflict of authority, some courts holding that "there
cannot be a total loss so long as the remnant of the structure
standing is reasonably adapted for use as a basis upon which
to restore the building to the condition in which it was be-
fore the fire; and that whether it is so adapted depends upon
the question whether a reasonably prudent owner, uninsured,
desiring such a structure as the one in question was before
the fire, would in proceeding to restore it to its original con-
dition utilize such remnant as such basis." 14 Ruling Case

Law, p. 1302, § 476. In the *St. Clara Female Academy Case* it was said:

"There are authorities to the effect that if there is any part of the building left, worth more in place than the cost of removing it, the destruction is not complete within the meaning of valued-policy statutes. . . . It is not considered that there is any legitimate warrant for such view in anything said by the court in its published opinions. . . . Our statute deals with the specific thing insured, not solely the value. Its purpose was not only to prevent frauds by over-insurance, but to remove the temptation, on the part of insurance companies, to demand and secure settlements for losses for less than the amounts called for by the contracts of insurance, where the structures insured have been, as such, substantially destroyed."

From the testimony in this case offered by the plaintiff, we consider that the court could find that the roof of the building was destroyed and the sidings pretty thoroughly burned; that most of the studs, rafters, and joists were burned away; that the flooring on the second floor was badly burned, but remains in a condition which would enable one with care to walk upon it, or upon portions of it. There is testimony, apparently based on an estimate of usable materials remaining, that about fifteen per cent. of the building remains. A photograph was offered in evidence, and it was testified by plaintiff that this represented the appearance of the building after the fire. From this picture it is evident that the roof was completely destroyed, and the east gable and the entire front wall and front porch very badly burned. The original outlines of the building remain so that it at least can be said that one could recognize that it had been a building and determine its original shape. Has the building, as the result of the fire, lost its character and identity as a building? We have concluded that the trial court was entitled to find on this evidence that it had. There is evidence from which the trial court could have concluded that the

combustible material in the structure was largely destroyed or rendered useless by the fire and heat, and that although the walls were left standing, their utility and identity as walls were completely destroyed. Upon the test applied by other courts in ascertaining total loss, there was also sufficient evidence to warrant a conclusion that a prudent owner, uninsured, desiring such a structure as the one in question, would not, in restoring it, have utilized the remnants of this building.

We do not find it necessary to decide, and do not decide, that this was a constructive total loss by reason of the fact that a building permit was denied to the plaintiff to utilize the remains of the structure as a basis for its restoration.

*By the Court.*—Judgment affirmed.